* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby affirms in part, and reverses in part, the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff's alleged date of injury is August 15, 2002.
4. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant-employer.
5. On the date of the injury giving rise to this claim, The Zenith Insurance Company was the workers' compensation carrier on the risk.
6. Judicial notice may be taken of Industrial Commission Forms 18, 33, and 33R.
7. On the date of the injury giving rise to this claim, plaintiff had an average weekly wage of $551.25, yielding a compensation rate of $367.13.
8. Documents stipulated into evidence include the following: Stipulated Exhibit #1, containing Industrial Commission Forms and Plaintiff's medical records, excluding pages 54 and 55 of Exhibit B, alternatively marked as Plaintiff's Exhibits I and J respectively, which are also admitted into evidence.
9. Issues for determination include:
 a. Did the plaintiff suffer a compensable injury by accident or occupational disease on August 15, 2002, or at any time thereafter; *Page 3 
 b. What is the period of temporary total disability that the plaintiff is entitled to, to date, as a result of the injury on or about August 15, 2002 or at any time thereafter;
 c. Is the plaintiff entitled to ongoing or past due temporary total disability benefits and medical care as a result of the injury by accident with defendant-employer;
 d. Is there a causal relationship between the surgery which claimant underwent, and any injury which he sustained while on the job; and
 e. Is plaintiff entitled to any temporary total disability or permanent partial disability compensation.
 * * * * * * * * * * * EVIDENTIARY RULINGS
The objections raised by counsel at the depositions taken in this matter are ruled upon in accordance with the law and consistent with the findings of fact and conclusions of law in this Opinion and Award.
 * * * * * * * * * * *
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 48 years old at the time of hearing before the Deputy Commissioner. He is a high school graduate, and served 21 years in the U.S. Air Force. After leaving the Air Force, plaintiff went to work for defendant-employer, initially in the parts department, and *Page 4 
thereafter he became a mechanic. As a mechanic, plaintiff's job duties include servicing boats, motors and trailers, and checking out boats when they need service.
2. Plaintiff testified that on during the morning of August 15, 2002, he was asked to perform a compression check on a bass boat, and then took the boat to the test pond to perform a water test. Plaintiff testified that when he hit the power button on the boat, the steering locked up, causing him to drive the boat onto the bank. Plaintiff was unrestrained and was thrown into the dash of the boat. He experienced immediate pain in his lower back. Plaintiff informed his supervisor, Mr. Walt Ellis, of the accident and a statement form reporting the incident was completed.
3. On the afternoon of August 15, 2002, plaintiff sought treatment at the Fayetteville Veterans Administration Medical Center, where he complained of pain in his lower back and was diagnosed with low back pain. He was given Vicodin for pain, and was advised to return on an as-needed basis. Plaintiff made no mention of pain in his neck or upper back. Plaintiff had treated previously at the VA hospital for pain in his hands in May 2002. The Full Commission finds that the injury by accident of August 15, 2002, did not necessitate further medical treatment for plaintiff's low back injury beyond the medical services rendered to him on August 15, 2002.
4. Following the August 15, 2002, work-related incident, plaintiff continued to work his regular job. Plaintiff testified that within a week of the incident, "everything seemed pretty normal."
5. Plaintiff sought medical treatment on January 13, 2003, for pain in his right and left hands, and x-rays showed degenerative joint disease at C6-7 and mild arthritic changes in the left shoulder and hands. *Page 5 
6. In March 2003, the tingling in plaintiff's hands started lasting longer. On one particular day, plaintiff's left leg began to drag while he was changing gear oil at work. Plaintiff sought treatment with Womack Army Medical Center, where he was admitted on April 7, 2003, for weakness of his right hand and leg. While an inpatient, plaintiff underwent multiple tests including MRIs, CT scans, and a neurology consultation. He was referred to Dr. Henry Moyle of the Pinehurst Surgical Clinic for follow-up.
7. On May 9, 2003, plaintiff was seen by Dr. Moyle with complaints of neck pain and numbness in his right arm, which had progressed into his right hand and included all five fingers of that hand. Plaintiff also reported that he was dragging his right leg. Dr. Moyle's review of plaintiff's MRI scan revealed multi-level degenerative disease of the cervical spine. Dr. Moyle noted that plaintiff was suffering from a spinal cord compression in the neck and diagnosed plaintiff with congenital stenosis and disc herniation at C4-5.
8. On May 15, 2003, Dr. Moyle performed surgery consisting of a C4-5 anterior cervical decompression and arthrodesis, which Dr. Moyle described as a bone graft with titanium plates. Dr. Moyle saw plaintiff on July 9, 2003, for follow-up treatment. At that time, Dr. Moyle noted plaintiff's hand was better than it was pre-operatively. In addition, plaintiff had recovered about fifty percent (50%) strength and had a little bit of a limp. Plaintiff was noted to still have myelopathy in his lower extremities as well as his right upper extremity. Dr. Moyle instructed plaintiff that he could return to work with no lifting greater than 25 pounds, no lifting above his shoulders, and to avoid keeping his neck fixed in one position for a long period of time.
9. On October 1, 2003, Plaintiff returned to Dr. Moyle for a follow-up appointment. On exam, Dr. Moyle noted Plaintiff to be stable with no progression of his myelopathy. The *Page 6 
surgical incision was well-healed, and plaintiff's neck showed good range of motion. Dr. Moyle reviewed the last x-rays and those revealed the graft and plate were in good position. Dr. Moyle ordered a functional capacity examination to document any limitations in plaintiff's working status.
10. On October 22, 2003, Plaintiff underwent a physical work performance evaluation at ErgoScience. Evaluator Ray Blatz noted that Plaintiff ambulated with an irregular gait throughout the evaluation, which varied in severity during tasks. Based on this evaluation, plaintiff was capable of sustaining the medium level of work for an eight-hour day. However, plaintiff also presented with decreased right upper extremity strength on MMT, positive neural tension test on left upper extremity, and numbness down left upper extremity with cervical extension.
11. Dr. Moyle saw Plaintiff on November 17, 2003, following the functional capacity evaluation. On physical examination, Dr. Moyle noted that plaintiff had residual myelopathy affecting both his leg and arm. Dr. Moyle prescribed Ultram for pain, and instructed plaintiff to return in six months.
12. On March 29, 2004, plaintiff returned to Dr. Moyle. On physical examination, plaintiff was still walking with a slight antalgic gait. Dr. Moyle also noted some continuing right leg weakness and underlying myelopathy. Dr. Moyle deemed plaintiff to be at maximum medical improvement, assigned a permanent partial impairment rating of twenty-five (25%) to plaintiff's back, and released plaintiff from his care.
13. At the time of hearing before the Deputy Commissioner, plaintiff continued to be employed by defendant-employer, working at the parts counter. *Page 7 
14. Dr. Moyle was unable to testify with any degree of probability regarding the cause of plaintiff's cervical condition and the need for surgery. He testified that he was not prepared to say that one event was more likely to have caused plaintiff's cervical condition than any other, and could only state that the August 15, 2002, work-related incident was a "possible" cause. Based on the testimony of Dr. Moyle, and the medical evidence of record, the Full Commission finds that plaintiff has failed to show that the August 15, 2002, injury by accident was the proximate cause of the plaintiff's cervical neck condition, which necessitated surgery by Dr. Moyle on May 15, 2003.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. For an injury to be compensable, it must be an injury by accident arising out of and in the course of the employment. N.C. Gen. Stat. § 97-2(6). Plaintiff has shown that he sustained an injury by accident to his lower back on August 15, 2002, for which he received same-day treatment. Id.
2. "Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). "Could" or "might" expert testimony is insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000). In the present case, there is *Page 8 
insufficient competent medical evidence to establish, beyond mere speculation, that the August 15, 2002 injury by accident was the proximate cause of the plaintiff's cervical neck condition, which necessitated surgery by Dr. Moyle on May 15, 2003.
3. Plaintiff is entitled to receive medical treatment that was reasonably necessary to provide relief to plaintiff's lower back following the injury by accident on August 15, 2002. N.C. Gen. Stat. §§ 97-2(19) and 97-25. This medical treatment shall be limited to the services rendered to plaintiff on the date of injury, August 15, 2002, because plaintiff did not require further treatment for his lower back beyond that date. Id. Plaintiff is not entitled to receive medical treatment for his non-related cervical neck condition and surgery.Id.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits attributable to his cervical condition under the law must be, and is hereby, DENIED.
2. Defendants shall make payment for the medical treatment that was reasonably necessary to provide relief to plaintiff's lower back following the injury by accident on August 15, 2002. This medical treatment shall be limited to the services rendered to plaintiff on the date of injury, August 15, 2002, because plaintiff did not require further treatment for his lower back beyond that date.
3. Each side shall pay its own costs.
 This 1st day of February 2007. *Page 9 
 S/_____________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________________ THOMAS J. BOLCH COMMISSIONER *Page 1